**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dale Parcell and Kathryn L. Parcell, ) | No. CV 12-0368-PHX-JAT |
| )  Plaintiffs, ) | **ORDER** |
| ) vs. ) | |
| ) Wright Medical Technology, Inc.; Wright ) Medical Group, Inc., ) | |
| ) Defendants. ) ) | |

Pending before the Court is Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 12). The Motion seeks to dismiss some, but not all, of Plaintiffs' claims. The Court now rules on the Motion.

**I.    BACKGROUND**

Plaintiffs Dale and Kathryn Parcell brought this product liability suit against Defendants Wright Medical Technology Incorporated and Wright Medical Group Incorporated, alleging various claims that arose from what Plaintiffs allege was a defective Wright Medical ProFemur Total Hip System (the "Device"), which Plaintiffs further allege was "designed, manufactured, tested, labeled, marketed, distributed and/or sold" by Defendants. Doc. 1 at ¶ 11.

According to the Complaint, Plaintiff Dale Parcell's experience with the Device has proceeded as follows. The Device was implanted in Mr. Parcell on June 28, 2005 during a

1 left total hip replacement procedure. *Id.* at ¶¶ 12-13.  Approximately six years later, on July 2 6, 2011, a component of the Device implanted in Mr. Parcell failed, causing him excruciating 3 pain.  *Id.* at 14.  The next day, Mr. Parcell underwent revision surgery to remove the 4 fractured component of the Device and have a Wright Medical cobalt chromium ProFemur 5 Z plus modular femoral neck implanted in its place.  *Id.* at ¶ 15.  As a result of the Device's 6 failure, Mr. Parcell alleges that he has "suffered severe physical and mental pain and anguish, 7 disability and inconvenience, incurred substantial hospital, medical and rehabilitation 8 expenses, loss of ability to work, and loss of ability to enjoy life, and will continue to suffer 9 these losses in the future."  *Id.* at ¶ 17.  Mr. Parcell further alleges that he could not have 10 reasonably discovered any problems with the Device until he underwent revision surgery. 11 *Id.* at ¶ 18.

12 The Device itself is comprised of three separate components that are assembled during 13 surgery: a femoral head, a modular neck, and a femoral stem.  *Id.* at ¶ 24.  Each component 14 is available in multiple sizes, and the modular nature of the Device allows it to be customized 15 to the unique anatomy of each patient.  *Id.*  However, this feature of the Device also can 16 contribute to higher levels of corrosion, wear, fretting, and fatigue at the interfaces between 17 the modular components.  *Id.* at ¶ 27.  Fretting, which is "a wear mechanism that occurs at 18 low amplitude between two mechanically joined parts under load," is particularly 19 problematic in modular devices because "it is almost impossible to prevent." *Id.* at ¶ 27-28. 20 Various design characteristics may affect the amount of fretting, including "neck diameter, 21 neck length, the material with which the neck is made, the method of assembly required, and 22 fabrication tolerances of the joined parts."  *Id.* at ¶ 29.  With regard to the material chosen 23 for the neck, studies have shown that those made from titanium "are more likely to suffer 24 fretting corrosion and fatigue fracture than those made from cobalt-chromium."  *Id.* at ¶ 30.

25 The particular modular neck that failed in Mr. Parcell's Device was made of titanium. 26 *Id.* at ¶ 25.  However, in 2009, Defendants changed the material of the modular neck used 27 in the Device from titanium to a cobalt-chrome alloy.  *Id.* at ¶ 33.  Plaintiffs allege that, 28 despite this change to the Device, Defendants "implemented no corrective action in the form

- 2 -

of a recall or even an announcement or warning to the medical community or to the public at large concerning its decision." *Id.* at ¶ 34.  Nevertheless, Plaintiffs further allege that Defendants "were aware, or should have been aware, of the danger of fatigue fracture and failure risks inherent in the titanium ProFemur modular femoral neck adapters generally." *Id.* at ¶ 35.  Despite this alleged knowledge of problems with the Device, Defendants allegedly "have consistently underreported and withheld information as to the propensity of the Device to fail, [have] intentionally misled the FDA by underreporting adverse event reports and withholding information showing the propensity of the Device to fail, and [have] intentionally misrepresented the efficacy and safety of the Device to the medical community, patients and the public at large." *Id.* at ¶ 41.

In the Complaint, Plaintiffs state the following nine claims for relief: Count I - Negligence; Count II - Strict Liability - Design Defect; Count III - Strict Liability - Manufacturing Defect; Count IV - Strict Liability - Failure to Warn; Count V - Breach of Express Warranty; Count VI - Breach of Implied Warranty of Fitness;[1] Count VII - Negligent Misrepresentation; Count VIII - Fraudulent Misrepresentation; and Count IX - Loss of Consortium.  Plaintiffs seek general damages, special damages, and punitive damages, in addition to various costs.  *Id.* at 22.  Defendants have moved under Rule 12(b)(6) to dismiss Counts V, VI, VII, and VIII, in addition to Plaintiffs' request for punitive damages.  The Court now rules on the motion.

## II.   LEGAL STANDARDS

### A.   Pleading Standard under Rule 8(a)

The Court may dismiss a complaint for failure to state a claim under 12(b)(6) for two reasons: 1) lack of a cognizable legal theory and 2) insufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

---

[1] In the Complaint, this count is incorrectly labeled as "Count V - Breach of Implied Warranty of Fitness."  Doc. 1 at 18.  Because it is the sixth count in the Complaint, the Court will refer in this Order to this count as "Count VI."

- 3 -

To survive a 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). The factual allegations of the complaint must be sufficient to raise a right to relief above a speculative level. *Id*. Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id*. (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1202, pp. 94, 95(3d ed. 2004)).

Rule 8's pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). A complaint that offers nothing more than naked assertions will not suffice. To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678. Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant has acted unlawfully. *Id*. "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (citing *Twombly*, 550 U.S. at 557).

In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the facts

alleged in the complaint in the light most favorable to the drafter of the complaint and the Court must accept all well-pleaded factual allegations as true. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### B.     Heightened Pleading Standard under Rule 9(b)

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). It thus "requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Bosse v. Crowell Collier & Macmillan*, 565 F.2d 602, 611 (9th Cir. 1977). The Ninth Circuit has "interpreted Rule 9(b) to mean that the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (citing *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985)). "[I]n order for a complaint to allege fraud with the requisite particularity, 'a plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading.'" *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999) (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc)) (footnote omitted).

Furthermore, there may be cases where fraud is not an essential element of a claim, but where the plaintiff has nevertheless "allege[d] a unified course of fraudulent conduct and rel[ied] entirely on that course of conduct as the basis of a claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). In such cases, "the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Id.* at 1103-04. In other cases where fraud is not an essential element of a claim and the plaintiff has alleged both fraudulent and non-

fraudulent conduct, "only allegations ('averments') of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b). Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)." *Id.* at 1105. Finally, "dismissals for failure to comply with Rule 9(b) should ordinarily be without prejudice. Leave to amend should be granted if it appears at all possible that the plaintiff can correct the defect." *Id.* at 1108.

## III. ANALYSIS

### A. Plaintiffs' Breach of Express Warranty and Breach of Implied Warranty Claims

Defendants first argue that Plaintiffs' breach of warranty claims (Counts V and VI) are barred by the applicable statute of limitations. Specifically, Defendants assert that the four-year statute of limitations in section 47-2725 of the Arizona Revised Statutes bars both claims. *See* A.R.S. § 47-2725(A) ("An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued."). Thus, Defendants argue that the four-year statute of limitations began to run on June 28, 2005, when Mr. Parcell's initial surgery to implant the Device occurred, and expired in 2009, nearly three years before Plaintiffs filed this suit on February 22, 2012. Clearly, this statute of limitations applies to bar Plaintiffs' warranty claims unless the running of the statute was tolled.

Section 47-2725(B) provides a basis for such tolling in certain circumstances, stating that "[a] breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." A.R.S. § 47-2725(B). Though Arizona courts have not clarified what is required for a warranty to "explicitly extend[] to future performance," the Ninth Circuit adopted the following "majority rule" in construing a Washington statute with identical language to that of section 47-2725(B):

> Most courts have been very harsh in determining whether a warranty explicitly extends to future performance. Emphasizing the word "explicitly," they have ruled that there must be specific reference to a future time in the warranty. As a result of this harsh construction, most express warranties cannot meet the test

- 6 -

and no implied warranties can since, by their very nature, they never "explicitly extend to future performance."

*W. Recreational Vehicles, Inc. v. Swift Adhesives, Inc.*, 23 F.3d 1547, 1550 (9th Cir. 1994) (quoting *Standard Alliance Indus. v. Black Clawson Co.*, 587 F.2d 813, 820 (6th Cir. 1978)). Thus, under the majority rule, "courts construe the term 'explicit' to mean that the warranty of future performance must be unambiguous, clearly stated, or distinctly set forth." *Id.* (internal quotation and brackets omitted). In light of the absence of any guidance from Arizona courts to the contrary, the Court will apply this majority rule to determine whether the exception in section 47-2725(B) might apply.

### 1. *Express Warranty Claim*

With regard to the express warranty claim, Plaintiffs argue that the exception in section 47-2725(B) applies such that the statute of limitations did not begin to run until Mr. Parcell's revision surgery on July 6, 2011, the date that he discovered the breach. To support their argument, Plaintiffs cite in their response to four paragraphs of the Complaint. Doc. 15 at 4. However, the cited paragraphs only vaguely reference Defendants' general marketing strategies and "misrepresentations" to the medical community. From these vague allegations, the Court is unable to draw a reasonable inference that an express warranty that explicitly extended to future performance existed.

Therefore, the Court agrees with Defendants that Plaintiffs' Complaint makes no allegations of any express warranties that "explicitly extend[] to future performance," which is required for any tolling of the statute of limitations to occur. *See* A.R.S. § 47-2725(B). However, the Court cannot say with certainty that Plaintiffs are unable to properly allege an express warranty that might fall within the exception of section 47-2725(B). Thus, the Court will dismiss Plaintiffs' breach of express warranty claim with leave to amend.

### 2. *Implied Warranty Claim*

With regard to Plaintiffs' breach of implied warranty claim, that claim is clearly barred by the four-year statute of limitations because the exception in section 47-2725(B) does not apply to implied warranties. *See W. Recreational Vehicles*, 23 F.3d at 1550.

- 7 -

Furthermore, Defendants also argue that the implied warranty claim must be dismissed because, under Arizona law, it merges with Plaintiffs' strict liability claims (Counts II, III, and IV). Indeed, "in Arizona, when a complaint alleges product liability claims under theories of both breach of implied warranties and strict liability, those theories merge: 'the theory of liability under implied warranty has been merged into the doctrine of strict liability in tort, so that it is on this latter doctrine that the plaintiff's claim must stand or fall.'" *Hearn v. R.J. Reynolds Tobacco Co.*, 279 F. Supp. 2d 1096, 1103 (D. Ariz. 2003) (quoting *Scheller v. Wilson Certified Foods, Inc.*, 559 P.2d 1074, 1076 (Ariz. Ct. App. 1977)). In their response, Plaintiffs do not contend otherwise. Therefore, the Court will dismiss Plaintiffs' Breach of Implied Warranty claim with prejudice.

### B. Plaintiffs' Negligent Misrepresentation and Fraudulent Misrepresentation Claims

Defendants also argue that both of Plaintiffs' misrepresentation claims (Counts VII and VIII) are subject to the heightened pleading standard of Rule 9(b) and that Plaintiffs have failed to plead either claim with sufficient particularity to meet that standard. The Court agrees with Defendants that Plaintiffs' Complaint fails to include "the who, what, when, where, and how" of Defendants' alleged fraudulent misconduct. *See Vess*, 317 F.3d at 1106. Instead, Plaintiffs simply rely on vague assertions that "at all relevant times" Defendants "were aware, or should have been aware," of various risks and problems associated with Defendants' femoral neck adapter product. *See, e.g.*, Doc. 1 at ¶¶ 33-35, 40-41, 55. Plaintiffs further allege that Defendants, again "at all relevant times, . . . intentionally made material misrepresentations," *id.* at ¶ 55, and "consistently underreported and withheld information as to the propensity of the [product] to fail."[2] *Id.* at ¶ 41. In light of these

---

[2] Some of Plaintiffs' allegations of fraudulent conduct describe statements or omissions that Defendants directed toward the FDA, rather than toward Plaintiffs or the medical community in general. *See, e.g.*, Doc. 1 at ¶¶ 41, 42, 45 & 53. However, to the extent that Plaintiffs claim such "fraud on the FDA," those claims are preempted by federal law, *Buckman Co. v. Plaintiff's Legal Comm.*, 531 U.S. 341, 353 (2001), and therefore would require dismissal even if they met the pleading standard of Rule 9(b).

alleged misrepresentations and omissions, Plaintiffs further allege that Defendants "acted with gross negligence and willful and wanton disregard for the safety of the general public and the Plaintiff in knowingly and intentionally continuing to market, promote and sell the [product] . . . so as to maximize its sales and profits." *Id.* at ¶ 96.

However, none of these allegations identifies any specific statements or omissions, let alone what might have been false or misleading about them. Plaintiffs also fail to identify with sufficient factual specificity who made any misleading statements, and when and where they were made. Though Plaintiffs give somewhat more detailed factual information with regard to Defendants' decision to switch from a titanium product to one made of cobalt chrome, *id.* at ¶ 33-34, Plaintiffs do not state with the required factual detail why this decision and Defendants' actions related to it were fraudulent. The same is true of Plaintiffs' description of Defendants' alleged "kickback" scheme, which appears only in Plaintiffs' response and not in the Complaint itself. *See* Doc. 15 at 8. Hence, the allegations of fraudulent conduct in Plaintiffs' Complaint do not meet Rule 9(b)'s heightened standard.[3]

These inadequate pleadings are clearly problematic with regard to Plaintiffs' claim for fraudulent misrepresentation, which is subject to the requirements of Rule 9(b) because it includes fraud as a necessary element. *See Carrel v. Lux*, 420 P.2d 564, 568 (Ariz. 1966) (listing the elements necessary to establish fraudulent misrepresentation in Arizona). Therefore, the Court will dismiss Count VIII of the Complaint. Further, though Plaintiffs' allegations as they now stand fall far short of the Rule 9(b) pleading standard, the Court cannot say that it is not at all possible that Plaintiffs can correct the defect. *See Vess*, 317 F.3d at 1108. Thus, the Court will grant Plaintiffs leave to amend their fraudulent

---

[3] Plaintiffs also state that, though they believe their Complaint meets the required pleading standards, they "intend to conduct discovery to substantiate in more specific detail the foundation of their allegations." Doc. 15 at 8. However, "since the purpose of Rule 9(b)'s heightened pleading requirement is to protect a defendant from the reputational harm inherent in fraud allegations," Plaintiffs will not be permitted "to conduct a discovery fishing expedition before properly stating any fraud-based claim." *Reiniger v. W.L. Gore & Assocs., Inc.*, No. CV-09-8185-PCT-PGR, 2010 WL 1948588, at *3 (D. Ariz. May 12, 2010) (citing *Vess*, 317 F.3d at 1104).

- 9 -

misrepresentation claim.

On the other hand, under Arizona law "[n]egligent misrepresentation is a separate tort from that of fraud." *Arnold & Assocs., Inc. v. Misys Healthcare Sys.*, 275 F. Supp. 2d 1013, 1029 (D. Ariz. 2003) (citing *Pettay v. Ins. Mktg. Servs.*, 752 P.2d 18, 21 (Ariz. Ct. App. 1987)). Negligent misrepresentation "is committed by the giving of false information intended for the guidance of others and justifiably relied upon by them causing damages if the giver of the false information fails to exercise reasonable care or competence in obtaining or communicating the information." *Id.* (citing *St. Joseph's Hosp. & Med. Ctr. v. Reserve Life Ins. Co.*, 742 P.2d 808, 813 (Ariz. 1987)). Thus, because negligent misrepresentation does not include fraud as a necessary element, the Rule 9(b) standard only applies to Plaintiffs' entire claim if it is "grounded in fraud." *See Vess*, 317 F.3d at 1103-04. Otherwise, the Rule 9(b) standard does not apply to any allegations of non-fraudulent conduct. *Id.* at 1104.

The Court finds that Plaintiffs' negligent misrepresentation claim is subject to the requirements of Rule 9(b) because the basis of that claim is the same "unified course of fraudulent conduct" that Plaintiffs rely on for their fraudulent misrepresentation claim. *See id.* That is, the conduct that Plaintiffs allege to be negligent is identical to the conduct that Plaintiffs allege elsewhere in the Complaint to be intentional and fraudulent. Plaintiffs merely attempt to describe that conduct as negligent in support of one claim and fraudulent in support of another. It is clear to the Court, however, that Plaintiffs' characterization of the conduct in the Complaint, which includes several allegations of intentionally misleading statements, is more indicative of fraud than negligence. Thus, the claim is "grounded in fraud." Because the Court has found that none of the allegations of this fraudulent unified course of conduct meets the requirements of Rule 9(b), Plaintiffs' claim for negligent misrepresentation will also be dismissed with leave to amend.

### C.    **Plaintiffs' Request for Punitive Damages**

Finally, Plaintiffs request punitive damages in the Complaint. Defendants argue that Plaintiffs did not properly plead this "claim" for punitive damages. However, Plaintiffs'

- 10 -

request for punitive damages is not a separate claim in the Complaint, but rather is incorporated into Plaintiffs' prayer for relief and is thus not tied to any specific claims. Furthermore, the Court finds that the allegations in the Complaint are sufficient to support a reasonable inference that Defendants acted with the "evil mind" that is required to support an award of punitive damages in Arizona. *See Linthicum v. Nationwide Life Ins. Co.*, 723 P.2d 675, 679 (Ariz. 1986). Thus, the Court will deny Defendants' motion to dismiss Plaintiffs' prayer for punitive damages.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** granting in part and denying in part Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 12). Plaintiffs' claim of Breach of Implied Warranty (Count VI) is dismissed with prejudice. Plaintiffs' claims of Breach of Express Warranty (Count V), Negligent Misrepresentation (Count VII), and Fraudulent Misrepresentation (Count VIII) are dismissed with leave to amend. The motion is denied with respect to Plaintiffs' request for punitive damages.

**IT IS FURTHER ORDERED** that Plaintiffs shall have 14 days from the date of this Order to file an amended complaint.

DATED this 6th day of July, 2012.

James A. Teilborg
United States District Judge